IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:19-133-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JOSHUA ZEIGLER | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). The defendant contends that based upon changes to substantive law and sentencing law since he was sentenced, and based upon his current medical conditions under the COVID-19 pandemic, his sentence should be reduced.

In its opposition memorandum, the government argues that the defendant has not shown extraordinary and compelling reasons for his release, and alternatively, even if he did, his release would not be justified after careful examination of the 18 U.S.C. § 3553(a) factors. The defendant replied thereto.

For the following reasons, the defendant's motion (ECF No. 184) is respectfully denied.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all

1

administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Here, the government concedes that the defendant has exhausted his administrative remedies.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for

compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result,

district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

## DISCUSSION

### I. *Claims of an Erroneous Sentence*

The defendant asserts a number of legal arguments which may be quickly dismissed. He first contends that his sentence is erroneous under *Rahaif v. United States,* 139 S.Ct. 2191 (2019) and *Gary v. United States*, 141 S.Ct. 974 (2021). Neither of these cases have any application to the defendant's case because he was not convicted of being a felon in possession of a firearm or ammunition. Rather, he pleaded guilty to armed bank robbery and brandishing a firearm in furtherance of a crime of violence. The government correctly states the Fourth Circuit's holding that bank robbery in violation of 18 U.S.C. § 2113(a) is a crime of violence within the meaning of the § 924(c) force clause. *United States v. McNeal*, 818 F.3d 141, 157 (4th Cir. 2016).

The defendant cites changes to the law of stacking under 18 U.S.C. § 924(c). Additionally he contends that Hobbs Act robbery is no longer a crime of violence predicate offense. However, the defendant was neither sentenced nor stacked under § 924(c), nor has he been convicted of Hobbs Act robbery.

The defendant next alleges that he would not face the same sentence today given the First Step Act. However, as the government points out, the defendant was sentenced on

September 10, 2019, *after* the enactment of the First Step Act. Therefore any benefits that flow from the First Step Act were already considered at the defendant's 2019 sentencing.

In his reply memorandum (ECF No. 210), the defendant points out that the government's opposition memorandum was filed nine days after the extended deadline provided by this court. Because of this, the defendant suggests that the government's memorandum and the arguments contained therein, must be disregarded by this court. The court finds no merit to this argument. The defendant has suffered no prejudice from the short delay in receiving the opposition memorandum. Moreover, even if the government had not responded, or if this court ignored the responsive memorandum, this court nevertheless is under an obligation to carefully review compassionate relief requests on their individual merits and the court would have raised the same issues raised by the government and addressed in this order in any event.

Finally, the remainder of the defendant's reply memorandum consists of challenges to certain state court convictions on his record. This court has previously denied a motion on the merits filed by the defendant under 28 U.S.C. § 2255.[1] Moreover, a motion for compassionate release is not the proper vehicle to contest the underlying validity of state court convictions that were recognized and accepted by this court at the defendant's

---

[1] In his § 2255 motion, the defendant raised the following claims: (1) 18 U.S.C. 924(c) aid and abet, brandishing a firearm has been ruled and held unconstitutional due to it is not a crime of violence, and is considered as an illegal sentence by the United States Supreme Court; (2) 18:2113(a) and 2113(d) Bank Robbery. I was sentenced to a charge that is unconstitutional; and (3) 18 U.S.C. 924(c) aiding abetting brandish a firearm during and in relation of a crime of violence. Bank robbery is ruled by the United States Supreme Court as unconstitutional and illegal, due to it not been a crime of violence. (ECF No. 177 at 5–6).

sentencing hearing to which the defendant did not object.

## II. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In regard to his medical conditions, the defendant contends that he suffers from diabetes and obesity. The BOP records reveal that he has been diagnosed with this maladies. The government argues that the defendant cites no medical conditions that would place him

at a particularly severe risk if he were to contract COVID-19. The government also points out that the defendant has denied on several occasions that he has diabetes and some of his medical records indicate that no diabetes is present. Additionally, as the government observes, numerous courts have determined that obesity, standing alone, is not sufficient to justify compassionate release in the throws of the COVID pandemic.

The record reveals that the defendant contracted COVID-19 in November 2020 and, fortunately, appears to have successfully recovered. Additionally, he has received two shots of the Moderna vaccine. Finally, the defendant's Presentence Report (PSR) (ECF No. 113) prepared in 2019 indicates that the defendant reported that he was in good physical health and denied regularly seeing a physician or taking prescription medicine.[2]

On this record, the court determines that the defendant has made a weak showing of an extraordinary and compelling need for his release based upon his current medical situation. Assuming, however, without deciding, that the defendant has made such a showing, the court easily concludes that his release at this time is not called for because the § 3553(a) sentencing factors, coupled with the defendant's post-sentencing conduct while incarcerated, indicate to this court that the request for relief should be denied. This leaves the defendant with the waning COVID-19 pandemic as his only avenue for compassionate release. On this record, the court must deny the defendant's motion.

---

[2] The PSR notes that in 2015, the defendant was shot in the shoulder and that the bullet is still in his body which causes nerve pain. The defendant does not raise this issue before the court.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense*. On December 4, 2018, the defendant, together with two others engaged in the violent armed robberies of BB&T Bank in St. Matthews, South Carolina, requiring a response from numerous law enforcement agencies. On that day, the defendant drove the vehicle used to facilitate the robbery, and he wore latex gloves and dark clothing together with his co-conspirators. The defendant brandished a firearm at a teller, went behind the teller's desk, and then left the bank to split the $18,317 in proceeds with his co-defendants.

On that day, a local police department was dispatched to the BB&T bank upon reports that the defendant and his co-defendants entered the bank wearing hoodies with their faces covered, gloves, and brandished handguns. One of the tellers was told to put her hands up and not move until she was told to do so; a second teller was in the restroom when one of the defendants kicked open the door and demanded she leave the restroom and go remove money from the teller drawer. The tellers described the two firearms pointed at them and the more than $18,000 stolen from the bank. The defendant was identified because it was determined that he purchased the vehicle used in the robbery about two weeks previously and because his GPS ankle monitor (he was out on bond for two counts of Attempted Murder charged

in the state system) indicated he was in the area of the BB&T bank during the armed robbery. When the defendant was arrested on December 5, 2018, he was found with a .40 caliber pistol, 20 round of ammunition, and an extended magazine; the firearm had been reported stolen two days earlier.

Regarding the criminal charges before this court, the defendant was one of three individuals named in a six Count Indictment filed on February 6, 2019 in the District of South Carolina. The defendant was charged in the following Counts:

Count 1:   Conspiracy to Commit Bank Robbery in violation of 18 U.S.C. § 371;

Count 4:   Armed Bank Robbery (on December 4, 2018) in violation of 18 U.S.C. § 2113(a);

Count 5:   Brandishing a Firearm (on December 4, 2018) During and in Relation to a Crime of Violence and Aid / Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and

Count 6:   Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

After executing a signed, written plea agreement (ECF No. 83), the defendant pleaded guilty to Counts 4 and 5 of the Indictment charging him with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 4); and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (Count 5).

The Presentence Report (PSR) (ECF No. 113) prepared by the United States Probation Office determined the defendant's base offense level was 20. Enhancements for taking property from a financial institution and physically restraining the victim, along with a 3-

level reduction for acceptance of responsibility, resulted in a total offense level of 21. With a criminal history category of V, the defendant's Guidelines were 77 to 96 months on Count 4, plus 84 months for the brandishing charge, to run consecutively.

At the sentencing hearing on September 10, 2019, the defendant presented no objections to the PSR. This court sentenced him at the bottom of the Guidelines to 161 months (77 months on Count 4, and 84 months on Count 5, to run consecutively as required by statute).

The defendant did not file an appeal of his conviction and sentence. He did file a motion pursuant to 28 U.S.C. § 2255 which this court denied on the merits and referenced earlier in this order.

The defendant is scheduled for release from the BOP in July 2030. He is located at the U.S. Penitentiary in Lewisburg.

2. *History and Characteristics of the Defendant*. Before engaging in the conduct which underlays his federal charge, the defendant had a significant criminal history. After two earlier juvenile convictions, he was convicted as an adult of Assault and Battery of a High and Aggravated Nature in 2007 after hitting a female in the head with his fist, knocking her to the ground, and then kicking her multiple times in the side. He was released on parole following that offense and revoked twice. He was then convicted of a firearms offense in 2007 related to a shotgun found hidden in his pants leg. He was revoked twice following that offense as well. He was then convicted on two counts related to the burglary of a mosque

where he broke in to the premises and stole property; his parole was also revoked following that offense. In 2009 he was convicted of Use of a Vehicle With Intent to Deprive and Disturbing Schools for conduct that caused a school lock down. In 2010 he was convicted for conduct related to the burglary of a home in Charlotte, NC. His probation was revoked following that offense as well.

In 2015, he was convicted of burglary, grand larceny, and the possession of a stolen vehicle after he broke into a home, stole $2,300 worth of property, and left his fingerprints behind. In 2019 he was convicted of two counts of Assault & Battery 1st Degree for particularly egregious conduct: the PSR describes the defendant following a woman and her one year old daughter on the interstate and causing them to pull over on the interstate once the victim realized she was being followed; the defendant then brandished a firearm and shot numerous rounds into the vehicle with the mother and 1 year old child inside the car. As a result of this extraordinary history, the defendant was as found to have 18 criminal history points, placing him in the most severe category of the sentencing table.

According to the PSR, the defendant was raised by his mother in Columbia, South Carolina and never knew his biological father. He has three half-siblings. He is single, having never married. He has two children, approximately aged 13 and 15, from previous relationships. The defendant completed the 11th grade of high school. He has prior work experience as a landscaper.

The defendant states that upon release he wishes to assist his Grandmother who is blind and needs a caregiver.

*Post Sentencing Conduct*

The BOP records show that the defendant has had two disciplinary infractions while incarcerated. In 2020 he was twice cited for refusing his work/program assignment.

The defendant has taken various educational courses and programming dealing with anger management, health, communication, and self-care. It is not clear whether the defendant has obtained his GED. The BOP transcript notes that the defendant is "enroll GED, not promotable." .

3. *Seriousness of the Crimes*. As noted, this court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. As evidenced by this court's lengthy term of imprisonment,

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant's motion for compassionate release is respectfully denied. (ECF No. 184).

IT IS SO ORDERED.

May 23, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge